Estate of William W. Stewart, Deceased, The Union Trust Company of Pittsburgh, a Corporation, and James E. MacCloskey, Executors and Trustees, v. Commissioner.
Estate of Stewart v. Commissioner
Docket No. 110759.
United States Tax Court
1944 Tax Ct. Memo LEXIS 397; 3 T.C.M. (CCH) 43; T.C.M. (RIA) 44011; January 18, 1944
*397 J. E. MacCloskey, Jr., Esq., W. A. Seifert, Esq., and Norman D. Keller, Esq., for the petitioners. R. H. Transue, Esq., and F. T. Donahoe, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in estate tax in the amount of $718,047.58. The determinations made by the respondent of which the petitioners complain are: (1) His valuation of 61,675 shares of common stock of Harbison-Walker Refractories Co. owned by the decedent at the amount of $1,410,815.63 instead of $1,233,500; (2) His valuation of 113,200 shares of the common stock of Long Island Lighting Co. owned by the decedent at the amount of $212,250 instead of $148,575; (3) His increase in the value of certain real estate owned by the decedent from the amount of $15,000 as reported in the Federal estate tax return to the amount of $20,000; (4) His failure to allow deductions for executors' commissions, attorneys' fees and miscellaneous expenses of administration in the aggregate amount of $180,170.76; and (5) His disallowance of any amount as a deduction on account of remainder interests bequeathed to certain charitable or educational corporations under *398 Article IV, Section II of the decedent's will. The valuation of the real estate, item (3) above, and the amounts of the deductions for executors' commissions, attorneys' fees and miscellaneous expenses of administration, item (4), have been stipulated, and the deduction on account of charitable remainders, item (5), is dependent under the stipulation of facts wholly upon the value of the Long Island Lighting Co. common stock and the actual amount of State inheritance and estate taxes and of the Federal estate tax to be paid pursuant to the Tax Court's decision. Accordingly, there is presented for determination by the Tax Court only the question as to the correct value for estate tax purposes of the 61,675 shares of Harbison-Walker Refractories Co. common stock and the 113,200 shares of Long Island Lighting Co. common stock. The stipulation of facts presented by the parties to this proceeding are adopted as our findings of fact. [The Facts] 1. William W. Stewart (hereinafter referred to as the decedent) died testate, a resident of Osborne Borough, Allegheny County, Pennsylvania, on December 11, 1937. The petitioners herein, The Union Trust Company of Pittsburgh and James E. *399 MacCloskey, were appointed executors and trustees by the decedent's will which was duly probated in the office of the Register of Wills of Allegheny County, Pennsylvania. They filed an estate tax return for the decedent with the collector of internal revenue for the 23rd district of Pennsylvania at Pittsburgh. 2. The decedent at the date of his death was the owner of 61,675 shares of the common stock of Harbison-Walker Refractories Co. (hereinafter sometimes referred to as Harbison-Walker) which were valued in the estate tax return, at the date of death of the decedent, at the amount of $1,164,115.63, or $18.875 per share. The respondent determined that the stock had a value at the date of decedent's death of $1,410,815.63, or $22.875 per share. 3. Harbison-Walker was incorporated in Pennsylvania on June 30, 1902, and is engaged in the manufacture of fire brick and other refractory materials. During the years 1937 and 1938 and prior thereto its outstanding capital stock consisted of 30,000 shares of $100 par value 6% cumulative preferred stock and 1,380,000 shares of no par common stock of which 21,117 shares were held in the corporate treasury in 1937. The common shares were listed *400 on the New York Stock Exchange. 4. The decedent was the largest individual holder of the common stock of Harbison-Walker. This stock was held on December 11, 1937, as follows: Number of
Total Number of
Blocks of Shares
Shareholders
Shares in Group
1-100
2,528
145,038
101-500
629
157,230
501-2,500
204
237,072
2,501-10,000
50
211,688
10,001-25,000
19
292,822
25,001-50,000
8
274,203
More than 50,000
1
61,675
5. On December 11, 1937, 600 shares of Harbison-Walker common stock were sold on the New York Stock Exchange. The high for the day was $23 1/2 and the low $22 1/4 or a mean between the high and the low of $22 7/8. 6. During 1937, 144,800 shares of Harbison-Walker common stock were traded on the New York Stock Exchange. The recorded number of shares traded each month, the low and the high of each month and the dates thereof were as follows: Shares
1937
Sold
Low
High
January
11,200
(1-4)
50 1/4
(1-22)
55
February
11,400
(2-17)
52 1/2
(2-5)
57
March
14,300
(3-1)
52 1/2
(3-5)
58 1/2
April
14,700
(4-27)
43
(4-1)
53 3/4
May
3,500
(5-13)
43
(5-25)
47
June
4,100
(6-17)
40
(6-1)
46 3/4
July
5,100
(7-1)
42
(7-23)
46 7/8
August
5,500
(8-27)
41
(8-3)
45
September
12,100
(9-28)
30 3/4
(9-2)
40
October
25,600
(10-19)
18
(10-1)
30 3/4
November
17,600
(11-24)
21
(11-1)
26 1/2
December
19,500
(12-31)
21
(12-1)
24
*401 7. The recorded number of shares of Harbison-Walker common stock traded on the New York Stock Exchange for each month for the period January 1, 1938, to April 30, 1938, the low and the high of each month and the dates thereof were as follows: Shares
1938
Sold
Low
High
January
16,300
(1-31)
20
(1-15)
25
February
8,300
(2-7)
20
(2-23)
22 1/4
March
12,200
(3-20)
15
(3-1)
21 7/8
April
16,900
(4-1)
15 1/2
(4-16)
21 3/4
8. Beginning with the month of September, 1937, industrial averages indicated a steady decline. The Dow-Jones industrial averages for the period August 1, 1937, to December 31, 1937, were as follows: 1937
High
Low
August
(8-14)
190.38
(8-27)
175.09
September
(9-1)
176.11
(9-24)
146.22
October
(10-1)
155.11
(10-19)
115.84
November
(11-1)
137.01
(11-23)
112.54
December
(12-8)
131.15
(12-29)
117.71
9. The decline in industrial averages generally continued during the first few months of the year 1938. The Dow-Jones industrial averages for the period January 1, 1938, to April 30, 1938, were as follows: 1938
High
Low
January
(1-12)
134.95
(1-28)
118.94
February
(2-23)
132.86
(2-4)
117.13
March
(3-1)
131.03
(3-31)
97.46
April
(4-18)
121.54
(4-1)
100.95
*402 10. Harbison-Walker had net income after provision for Federal and state income taxes and additional income tax for prior years and paid preferred dividends, common dividends, and had surplus for the year as follows: 1938
1937
1936
Net income
$736,434
$3,131,595
$3,462,483
Pref. dividends
180,000
180,000
180,000
Com. dividends
679,441
2,717,766
3,057,487
Surplus for year
$123,007
$ 233,829
$ 224,996
1935
1934
1933
Net income
$1,805,669
$1,247,461
$760.276
Pref dividends 180,000 270,000 135,000
Com. dividends 1,358.883 849,552
Surplus for year
$ 266,786
$ 127,909
$625,276
The earnings available for the payment of dividends upon each common share outstanding and the amount of dividends paid for the years 1933 to 1938, inclusive, were as follows: Earnings
Dividends paid
per share
per share
Year
Common Stock
Common Stock
1933
.43
1934
.79 .62 1/2
1935
1.20
1.00
1936
2.42
1.50
1937
2.35
2.00
1938
.47 .50
11. The consolidated balance sheets of Harbison-Walker at the end of the years 1938, 1937, and 1936 showed as follows: CONSOL. BALANCE SHEET DEC. 31 1938
1937
1936
ASSETS -
Bldgs., mach. & equip.
$18.574,619
$27,116,335
$27,075,901
Less depr.
5,995,782
5,323,138
4,983,304
Balance
$12,578,837
$21,793,197
$22,092,597
Clay, coal, ganister & other mining props.
8,098,996
14,805,382
14,822,650
Less depl.
2,057,147
2,008,900
1,904,334
Balance
6,041,849
12,796,482
12,918,316
Land
986,898
CURRENT ASSETS -
Cash
3,909,697
3,071,637
1,847,779
Accounts and notes receivable (net)
1,308,626
1,239,365
2,596,014
Inventories
3,296,703
4,066,271
3,415,524
Total Current Assets
8,515,026
8,377,273
7,859,218
Company's common stock
619,902
619,902
Marketable securities
3,378,054
3,376,054
3,376,054
Sundry investments
50,821
100,044
109,729
Misc. accts. receivable
1,346
Accts. receivable - stock purchase accounts
640,676
656,238
896,508
Deposits in closed or restricted banks - less reserves
2,094
4,030
Deferred charges
601,561
556,304
572,884
Total
$32,793,722
$48,277,588
$48,450,584
LIABILITIES -
Common stock
$20,383,245
$20,700,000
$20,700,000
Preferred stock
3,000,000
3,000,000
3,000,000
CURRENT LIABILITIES -
Accounts payable and accruals including taxes
$ 900,476
$ 1,293,929
$ 1,571,523
Dividend payable
45,000
45,000
45,000
Total current liabilities
945,476
1,338,929
1,616,523
Minority interest in capital stock and surplus of sub.
498,735
491,368
498,294
Res. for fire insurance and flood loss
370,983
370,983
369,526
Sundry reserves
757,249
751,896
678,654
Contingent securities reserve
4,451,503
4,451,502
Capital surplus
572,091
9,277,941
9,277,941
Earned surplus
6,265,943
7,894,968
7,858,144
Total
32,793,722
48,277,588
48,450,584
Net Working Capital
9,343,544
8,422,181
8,293,076
Current Ratio
10.9 to 1
7.3 to 1
6.1 to 1
*403 12. Decedent at the date of his death was the owner of 113,200 shares of the common stock of Long Island Lighting Co. (hereinafter sometimes referred to as Long Island) which was valued in the estate tax return as of the date of his death at the amount of $56,600, or 50 cents per share. The respondent in his notice of deficiency determined that the stock had a value at the date of decedent's death of $212,250, or $1.875 per share. 13. Long Island was incorporated in New York on December 31, 1910, and is engaged in supplying electric light and power and gas service on Long Island and in a portion of the Boroughs of Queens and Brooklyn. During 1937 and 1938 and prior thereto its outstanding capital stock consisted of 74,750 shares of $100 par value seven percent cumulative preferred stock, Series A, 179, 123 shares of $100 par value six percent cumulative preferred stock, Series B, and 3,000,000 shares of no par common stock. The consolidated balance sheet of Long Island and its subsidiaries at the same date shows a funded debt of $59,127,600 and notes payable of $10,610,000. 14. On December 31, 1937, the 3,000,000 shares of Long Island common stock were held by 3,207 stockholders. *404 This stock was listed and traded on the New York Curb Exchange. 15. There were no sales of Long Island common stock on the New York Curb Exchange on December 11, 1937, nor on the first trading date thereafter, December 13, 1937. On December 10, 1937, there was a sale on the said exchange of 100 shares at $1 7/8. On December 14, 1937, 200 shares were sold. The high for this day was $1 7/8 and the low $1 3/4 or a mean between the high and the low of $1 13/16. 16. During 1937, 287,400 shares of Long Island common stock were traded on the New York Curb Exchange. The recorded number of shares traded in each month in 1937, the low and the high of each month and the dates thereof were as follows: 1937
Shares Sold
Low
High
January
81,000
(1-4)
5 1/4
(1-14)
6 3/4
February
32,800
(2-26)
5
(2-4)
5 5/8
March
26,900
(3-29)
4 3/4
(3-1)
5 3/8
April
16,400
(4-28)
3 7/8
(4-1)
5
May
7,000
(5-19)
3 1/2
(5-1)
4 1/4
June
9,600
(6-10)
3 1/2
(6-9)
4
July
14,000
(7-1)
3 3/8
(7-27)
4 3/4
August
8,400
(8-27)
3 3/4
(8-2)
4 3/4
September
16,300
(9-27)
2 5/8
(9-1)
3 3/4
October
36,700
(10-19)
1
(10-1)
3 1/4
November
18,700
(11-24)
2
(11-1)
(11-12
2 3/4
to
(11-14)
December
18,800
(12-7)
(12-2)
2 1/8
(12-24)
1 1/2
(12-27
to
(12-30)
*405 17. The recorded number of s1886ach month for the period January 1, 1938, to April 30, 1938, the low and the high of each month and the dates thereof were as follows: 1938
Shares Sold
Low
High
January
5,900
(1-29)
1 1/2
(1-11
1 7/8
to 13)
(1-20
to 22)
(1-26)
February
8,600
(2-2)
1 1/2
(2-9)
1 3/4
March
11,100
(3-30)
1
(3-7)
1 5/8
April
5,600
(4-1)
1 1/8
(4-11)
1 5/8
18. Beginning with the month of August, 1937, utilities averages indicated a steady decline. The Dow-Jones utilities averages for the period July 1, 1937, to December 31, 1937, were as follows: 1937
High
Low
July
(7-26)
30.98
(7-1)
26.25
August
(8-2)
30.02
(8-27)
27.12
September
(9-1)
27.28
(9-25)
22.73
October
(10-1)
24.31
(10-19)
17.77
November
(11-15)
24.01
(11-23)
20.65
December
(12-23)
22.98
(12-29)
19.48
19. The decline in utilities averages generally continued during the first few months of 1938. The Dow-Jones utilities averages for the period January 1, 1938, to April 30, 1938, were as follows: 1938
High
Low
January
(1-12)
22.20
(1-31)
18.90
February
(2-25)
20.41
(2-4)
17.95
March
(3-1)
19.95
(3-31)
14.98
April
(4-23)
19.08
(4-1)
15.40
*406 20. The gross earnings, earned surplus and earnings per common share of Long Island for certain years were as follows: Earnings
Per
Gross
Earned
Common
Year
Earnings
Surplus
Share
1932
$21,102,443
$9,611,122
.86
1933
20,135,402
7,814,799
.49
1934
19,904,176
8,258,472
.22
1935
20,153,755
9,047,718
.27
1936
19,798,366
6,208,394
.16
1937
20,451,758
5,547,826
(.12)
Dividends were paid on each class of preferred shares in full to October 1, 1937. Dividends were paid, at one-half rate during 1938, and none since. No dividends have ever been paid on the common stock. Upon the basis of the stipulated facts the Court finds as follows: The fair market value of the 61,675 shares of Harbison-Walker Refractories Co. common stock owned by the decedent at date of death, December 11, 1937, was $1,233,500, or $20 per share, and the fair market value of the 113,200 no par value common shares of Long Island Lighting Co. on the same date was $148,575, or $1-5/16 per share. The stipulation filed by the parties provides in part: "12-a. It is agreed further that the purpose of the parties is to present solely the question of law, i.e., the criterion *407 of value to be employed in the circumstances presented by the stipulation. "12-b. It is agreed that, if the Court should hold as a matter of law that in the circumstances presented on account of the volume of shares involved the respective exchange prices do not represent the true criteria of values, then the Court should find that the respective values are $20 per share for the 61,675 shares of Harbison-Walker Refractories Company common stock and $1-5/16 per share for the 113,200 shares of Long Island Lighting Company common stock." The question for decision is the fair market value of estate tax purposes of 61,675 shares of common stock of Harbison-Walker Refractories Co. and 113,200 shares of common stock of Long Island Lighting Co. This is purely a question of fact. The petitioners by their stipulation attempt to restrict this Court in the determination of this question of fact by a question as to whether the large number of shares of stock owned by the decedent at the date of death and includable in his gross estate is to be given consideration in the determination of value. The Tax Court refuses to be so limited. The parties have stipulated that five persons competent to *408 testify as expert witnesses in this case would, if called as witnesses, testify that in their opinion the large blocks of stocks to be valued could not have been marketed at or about the date of decedent's death to net as much as $20 per share for the Harbison-Walker shares and $1 5/16 for the Long Island shares. The respondent contends that this is incompetent evidence and may not be considered by us. We think that it is competent evidence. Cf. . The quoted prices at which sales of a listed stock are made on a stock exchange may or may not be applicable in valuing large blocks of such shares. See ; ; ; ; ; ; *409 The possible effect of the number of shares involved is only one of many factors which must be taken into account in the valuation of shares of stock for estate tax purposes. Where there is an active and rising market sales of a small percentage of the total number of shares outstanding may well be taken as representative of the fair market value of a large block. . Also, in the case of stock which is widely held and which has a well recognized investment status the market price for the shares may well be taken as the fair market price for a very large number of shares. In addition to the stipulation that the five expert witnesses above referred to would testify to a market value of shares contended for by the petitioner there is much evidence of record which persuades us that the quoted values for the shares at or about the date of the death of the decedent are in excess of the fair market value of the total number of shares owned by the decedent at the date of his death. Exhibits 9 and 10 attached to the stipulation *410 are photostats of reports contained in Poor's Manual of Industrials for 1939 as regards Harbison-Walker Refractories Co., and Poor's Manual of Public Utilities for 1939 as regards Long Island Lighting Co. From a careful study of these exhibits it is apparent that the earnings of Harbison-Walker fluctuated greatly. Nearly all of the earnings for many years were paid out in dividends. The average dividend paid upon the company's common stock for the years 1933 to 1938, inclusive, was only $.9375 per share. A person buying the shares of common stock could not depend upon a dividend of more than $1 per share. The earnings in 1936 and 1937 were much higher than in prior years but it is quite apparent that by the close of 1937 poorer earnings were in prospect. The dividends paid on the common stock in 1938 amounted to only 50 cents per share and during the first two quarters of 1939 only 15 cents per share. Coming events cast their shadows before. The company sent quarterly reports to its stockholders. It is quite apparent that anyone who was familiar with the facts in the case would not have purchased any large number of the shares at or about the close of 1937 at a price of $20 per share *411 on an investment basis. The record of the Long Island Lighting Co. was much poorer than that of Harbison-Walker Co. The shares never had anything more than a speculative value. It is true that up to October 1, 1937, dividends were paid on the preferred shares outstanding at the full rate. But the earned surplus was declining from year to year with the result that the preferred dividends were halved during 1938, and thereafter passed altogether. There were no earnings available for the payment of a dividend upon the common stock for 1937 and no dividends had ever been paid upon it. In valuing shares of stock for estate tax purposes the aim is to determine the fair market value of all of the shares of stock owned by the decedent at the date of his death. The object is to find the fair market value between a willing buyer and a willing seller. This presupposes knowledge of essential facts. We think that upon a knowledge of essential facts purchasers for the large blocks of Harbison-Walker common stock and Long Island common stock could not have been found at prices in excess of $20 for the Harbison-Walker stock and $1 5/16 for the Long Island stock. We have made our determination *412 accordingly. Decision will be entered under Rule 50.